**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **ASSURANCE COMPANY OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:08-cv-0711** |
| ) | **Judge Trauger** |
| **CONTINENTAL DEVELOPMENT &** ) | |
| **CONSTRUCTION, INC.;** ) | |
| **NICK PSILLAS AND DEBBIE PSILLAS;** ) | |
| **THOMAS C. McCORD;** ) | |
| **and ELAINE E. McCORD,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM**</u>

Pending before the court is the motion to dismiss filed by the defendants Thomas C. McCord and Elaine E. McCord (Docket No. 45) and the motion for summary judgment filed by the plaintiff Assurance Company of America (Docket No. 52). For the reasons discussed herein, the defendants' motion to dismiss will be denied, and the plaintiff's motion for summary judgment will be granted.

Also pending is the plaintiff's motion to strike the defendants' summary judgment sur-reply (Docket No. 75), which will be denied as moot; the defendants' motion to deem their additional statement of facts undisputed (Docket No. 80), which will be denied; and the defendants' motion *in limine* to exclude the plaintiff's rebuttal expert from testifying (Docket No. 85), which will be denied as moot.

1

## BACKGROUND

On March 25, 1999, the defendants, Thomas C. McCord and Elaine E. McCord (the "McCords"), purchased a house located at 3156 Vera Valley Drive in Franklin, Tennessee, from the builder, Continental Development and Construction, Inc. ("Continental").

Five years later, on March 24, 2004, the McCords sued Continental, Continental's sales agent, and Nicholas and Debbie Psillas, the two individuals allegedly operating Continental, in the Circuit Court for Williamson County, Tennessee. (Docket No. 47 Ex. 1.) The McCords asserted, among other things, claims of negligence, fraudulent misrepresentation, negligent misrepresentation, violations of the Tennessee Consumer Protection Act, and breach of contract. (*Id.* at 2-5.) At the factual core of the McCords' complaint was the allegation that, due to alleged defects in the design and construction of the home, rainwater had been allowed to accumulate in a hidden space under the front steps and entrance to the home, which created an environment in which at least three different types of toxic mold had grown and caused damage to the home and illness to the McCords. (*Id.* at 2.) The McCords also alleged that the defendants knew the property was not designed and constructed to the relevant building code standards and that the defendants made intentional misrepresentations about the home's compliance with those building code standards in order to induce the McCords to purchase the property. (*Id*. at 3.)

On September 13, 2005, the Williamson County court granted in part and denied in part the defendants' motion for summary judgment with respect to the McCords' claims. (Docket No. 50 Ex. 4.) Specifically, the court found that, since the McCords' complaint was filed more than five years after substantial completion of construction of the home, the McCords were required to prove fraud or wrongful concealment as provided by the Tennessee statute of repose

to establish their causes of action for negligent construction, fraudulent misrepresentation, and breach of contract. (*Id.*) Subsequently, on October 10, 2005, the McCords were permitted to amend their complaint to add Corinthian Custom Homes, Inc. ("Corinthian"), Continental's corporate alter ego, as a party. (Docket No. 47 Ex. 3.) On December 18, 2006, the McCords were permitted to again amend their complaint to add claims of actual and constructive fraud because, the McCords alleged, the defendants had fraudulently concealed both that the home was not built to code standards and that the home was not properly constructed. (Docket No. 47 Ex. 5.)

On September 14, 2007, the jury returned a verdict in favor of the McCords in the Williamson County litigation. Specifically, the jury found that Continental committed actual fraud through an intentional misrepresentation and that the McCords were entitled to compensatory damages in the amount of $425,000 to Elaine McCord and $100,000 to Thomas McCord. (Docket No. 47 Ex. 6; Docket No. 50 Ex. 1.) The parties subsequently stipulated that any judgment entered against Continental is collectable against the assets of Corinthian. (Docket No. 47 Ex. 7.) Corinthian has appealed the judgment to the Tennessee Court of Appeals (Docket No. 47 Ex. 9), and the McCords state that they intend to cross-appeal the Williamson County court's finding that the defendants did not violate the Tennessee Consumer Protection Act and did not engage in constructive fraud (*see* Docket No. 46 at 3). On February 8, 2008, however, Corinthian filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Middle District of Tennessee and, as a result of that proceeding, a stay was imposed on the appeal. (Docket No. 56 Ex. A.)

On July 22, 2008, litigation commenced in this court when Assurance Company of America ("Assurance") filed a declaratory judgment action, asking the court to declare that the insurance policy that Assurance issued to Continental, which covered the period from September 19, 1998 to September 19, 1999, does not require Assurance to indemnify Continental for the McCords' injuries or to defend Continental in the Williamson County litigation.[1] (Docket No. 1.) Assurance asserts that the policy does not require it to indemnify or defend Continental to the extent that the policy contains an "expected or intended injury" exclusion that excludes from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (*Id.* at 5.)

On January 30, 2009, the McCords filed a motion to dismiss, arguing that the resolution of Assurance's declaratory judgment action depends, in part, on conclusions of fact and law from the Williamson County litigation, including conclusions regarding the intentionality of Continental's conduct, that remain to be settled on appeal. (Docket No. 46 at 3.) The McCords also argue that many of the issues raised by Assurance's declaratory judgment action, particularly the application of the expected or intended injury exclusion, involve unsettled questions of Tennessee law that should be determined by a Tennessee court. (*Id.*; Docket No. 61.) Applying the five-part test that the Sixth Circuit has articulated for determining whether a declaratory judgment matter is properly before a federal district court, the McCords argue Assurance's declaratory judgment action should be dismissed. (Docket No. 46 at 4-13.) In response, Assurance argues that the application of the five-part test renders this court's exercise

---

[1]References to "Continental" herein should be understood as referring collectively to Continental and to Corinthian.

of jurisdiction over the declaratory judgment action appropriate.  (Docket No. 56.)

On February 3, 2009, Assurance filed a motion for summary judgment, arguing that the court should find that Assurance is not required, as a matter of law, to indemnify or defend Continental in connection with the McCords' injuries because those injuries resulted from Continental's intentional conduct in misrepresenting the quality of construction and its compliance with the relevant building codes and because the expected and intended injury exclusion in the policy that Assurance issued to Continental eliminates Assurance's liability in such cases.  (Docket No. 53 at 9-15.)  In response, the McCords argue that Assurance has not demonstrated that the expected or intended injury exclusion, as interpreted under Tennessee insurance law, relieves Assurance of the obligation to indemnify and defend Continental with respect to the Williamson County litigation.[2]  (Docket No. 66.)

## ANALYSIS

As a preliminary matter, the court considers an issue raised by Assurance in its motion to dismiss — that is, whether the court can and should take judicial notice of a ruling the court issued in a similar case arising out of the same underlying facts.  The court then considers the merits of the McCords' motion to dismiss before turning to a consideration of Assurance's motion for summary judgment.

---

[2]Assurance subsequently filed a reply and an objection to an expert affidavit that the McCords submitted in their summary judgment response (Docket No. 71), and the McCords filed a sur-reply and response to Assurance's objection (Docket No. 74).  After the McCords filed their sur-reply, Assurance moved to strike the sur-reply (Docket No. 75), and the McCords moved, retroactively, for leave to file their sur-reply (Docket No. 78).  As the court granted the McCords' motion for leave to file their sur-reply (Docket No. 88), Assurance's still-pending motion to strike the sur-reply is effectively moot and will be denied as such.

# I.     Judicial Notice

Given the convoluted history between the various parties, it should come as no surprise that this case is not the only litigation that developed out of the same basic set of underlying facts.  In addition to the Williamson County litigation and Corinthian's bankruptcy proceeding, another insurance company filed a similar declaratory judgment action before this court and this judge, raising many of the same factual and legal questions that are at issue here.  Assurance has asked that the court to take judicial notice of the proceedings and findings of fact made by this court in that related matter, styled *Grange Mutual Casualty Co. v. Corinthian Custom Homes, Inc.*, No. 3:07-0020 (M.D. Tenn.).

The Federal Rules of Evidence provide that a court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute," to the extent that the fact is either "known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination."  Fed. R. Evid. 201(b).  Judicial notice of an adjudicative fact is generally discretionary but is mandatory where judicial notice is "requested by a party" and the court is "supplied with the necessary information."  Fed. R. Evid. 201(c), (d).  Moreover, proceedings before other courts and the findings of fact made therein are a proper subject for judicial notice. *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader*).

With respect to the *Grange* proceedings themselves, the fact of those proceedings is an appropriate matter for the taking of judicial notice, and further, is worthy of brief summary here. In *Grange*, another insurance company brought a similar declaratory judgment action, naming Corinthian as a defendant and asserting that it was not obligated to indemnify Corinthian for the

injuries suffered by the McCords because, among other things, the applicable insurance policy contained an expected and intended injury exclusion much like that here. (*Grange* Docket No. 1.) The McCords were permitted to intervene in that matter (*Grange* Docket No. 19) and subsequently sought to dismiss the action (*Grange* Docket No. 52), asserting substantially the same arguments as they do in their motion to dismiss in this case. Similarly, Grange sought summary judgment and asserted arguments largely parallel to those asserted by Assurance here. (*Grange* Docket No. 27.)

On September 24, 2008, this court ruled on those motions, granting Grange's motion for summary judgment on the grounds that the expected or intended injury exclusion relieved Grange of the obligation to indemnify Corinthian for the injuries that the McCords suffered and denying the McCords' motion to dismiss on the grounds that the exercise of jurisdiction over Grange's declaratory judgment action was appropriate. (*Grange* Docket No. 71.) The McCords promptly appealed that ruling. (*Grange* Docket No. 72.) Before the appeal was resolved, however, the parties reached a settlement, pursuant to which the United States Court of Appeals for the Sixth Circuit remanded the case to this court. (*Grange* Docket No. 77.) On April 17, 2009, consistent with the parties' settlement agreement, this court vacated its previous ruling granting summary judgment for Grange on the basis of the expected or intended injury exclusion and entered an alternative summary judgment for Grange on the grounds that the damages awarded to the McCords in the Williamson County litigation were excluded from coverage under the policy's fungi and bacteria exclusion, rather than the expected or intended injury exclusion. (*Grange* Docket No. 79.)

In addition to asking the court to take judicial notice of the fact of the *Grange* proceedings, however, Assurance also asks the court to take judicial notice of the findings of fact made in the September 24, 2008 ruling, a ruling that has since been vacated. Assurance notes that the September 24, 2008 ruling addressed many of the same issues that are in dispute here. As that ruling has been vacated, however, the findings of fact contained therein do not appear to the court to be a proper subject for the taking of judicial notice. It is one thing for the court to take judicial notice of the fact that it previously ruled on similar issues involving essentially the same underlying facts, but to take judicial notice of the findings of fact themselves, when the opinion in which those findings were made has since been vacated, seems improper, and none of the cases to which Assurance points suggests otherwise.

The court, therefore, will take judicial notice of the *Grange* proceedings, but declines to take judicial notice of any findings of fact contained in the ruling on the motion for summary judgment and motion to dismiss that it issued, and later vacated, in *Grange*. Instead, the court will consider anew the legal arguments raised by the parties and apply the applicable law to the facts present here. Needless to say, however, the apparent legal and factual similarities between this case and *Grange*, which are substantial, make it highly likely that the conclusions reached herein will mirror those reached by this court in its now-vacated opinion in *Grange*.

## II. The McCords' Motion to Dismiss

The McCords argue that the court should exercise its discretion and refuse jurisdiction over this declaratory judgment action because, they contend, many of the issues raised by this action are dependent on the outcome of appellate proceedings in the Williamson County litigation and because this case supposedly raises unsettled questions of Tennessee law.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Therefore, the Declaratory Judgment Act provides the district court with "unique and substantial discretion in deciding whether to declare the rights of litigants" and is an example of Congress's "creat[ing] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).

In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), the Sixth Circuit Court of Appeals articulated the criteria a district court should consider when deciding whether to exercise this discretion. The court stated, "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 326. To assist in analyzing whether these criteria are met, the *Grand Trunk* court propounded a five-factor balancing test for the district court to use in weighing whether it should exercise its discretion and entertain a plaintiff's declaratory judgment action. *Id.* Those factors are: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata'; (4) whether the use of a declaratory action would increase

friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.*

In a recent opinion discussing this five-factor test, the Sixth Circuit addressed competing lines of precedent within the circuit and provided clarification as to how courts should apply the five-factor test. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008). Using this clarifying case law as its guide, the court will consider each of the *Grand Trunk* factors in turn.

A. *Settlement of the Controversy*

The first factor to consider in deciding whether the court should entertain the declaratory judgment action is whether the court's judgment would settle the controversy. *Id.* at 554. In *Scottsdale*, the Sixth Circuit acknowledged that "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Id* at 555. The court noted that one set of cases tends to find that, to "settle a controversy," a declaratory judgment action need only resolve the insurance coverage controversy and need not necessarily resolve the underlying action. *Id.* On the other hand, another set of Sixth Circuit cases finds that a declaratory judgment action does not "settle the controversy" unless it resolves the entire controversy giving rise to the declaratory judgment action, including the underlying state court dispute. *Id.* The *Scottsdale* court did not explicitly resolve or reconcile the competing lines of precedent, noting only that the differing views may be explained by "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" and "different factual scenarios." *Id.*

While the *Scottsdale* court did not resolve the competing lines of precedent, it did find, based on the facts of that case, that, because the district court's ruling had resolved the controversy between the insurance company, the insured, and the claimant in that case, the district court "settled" the controversy and, therefore, that this factor favored the district court's exercise of jurisdiction. *Id.* at 556 (noting that "[t]he resolution . . . by the district court resolved all controversies between [the insurance company], [the insured], and [the individual asserting damages against the insured] because the only controversy *between them* regarded the scope of the insurance policy.") (emphasis added). Although the line of case law on this point is not exactly decisive, this most recent statement from the Sixth Circuit indicates that this court should closely consider the facts of the case and whether the declaratory judgment action would resolve the dispute between Assurance and the McCords. *Id.* at 556.

Here, as in *Scottsdale*, the only controversy between Assurance and the McCords is the scope of the insurance policy — specifically, whether the expected and intended injury exclusion applies to limit Assurance's obligation to indemnify and defend Continental under the relevant policy. The fact that an appeal in state court and Corinthian's bankruptcy proceeding are still pending does not alter the fact that the only issue as between Assurance and the McCords is the scope of the insurance policy. Moreover, the resolution of the insurance coverage issue constitutes the entirety of this lawsuit. As such, a ruling by this court will settle the controversy and, hence, this factor strongly favors the court's exercise of jurisdiction over this declaratory judgment action.

### B.    Clarification of Legal Relations

The second factor to consider is whether this court's judgment would clarify the legal relations at issue. *Id.* at 556. In *Scottsdale*, the court noted that the question of whether a declaratory judgment action will settle the controversy is closely linked to the question of whether that action will clarify the legal relations involved. *Id.* at 557. Not surprisingly, then, as with the previous factor, "a split has developed in our precedent" as to whether a district court's ruling need clarify only those legal relations presented by the declaratory judgment action or, also, those presented by the underlying state court action. *Id.*

The *Scottsdale* court was particularly instructive on how the district court should evaluate this factor. The court found "the [first] line of precedent to be more persuasive than the [second]. The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented." *Id.* The court noted that, while the parties may still have issues of tort and contract law to resolve on the state court level, the district court should recognize that "our concern in considering the second *Grand Trunk* factor in such cases is the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.*

The court's judgment in this case would conclusively resolve the question of Assurance's obligations under the relevant policy for the reasons discussed in the context of the "settlement of the controversy" factor, regardless of the fact that there remains the possibility of an appeal of the underlying state court judgment. As this proceeding will provide the finality the Sixth

Circuit discussed in *Scottsdale*, this factor favors the court's exercise of jurisdiction over this action.

C.      *Procedural Fencing*

The third factor to consider is whether the use of the declaratory judgment action is motivated by "procedural fencing" or a race for *res judicata*, that is, a desire by the federal declaratory judgment plaintiff to obtain a judgment with preclusive effect before the state court can rule on the underlying action. *Id.* at 558. The *Scottsdale* court stated that this factor is intended "to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 768 (6th Cir. 2004)). Thus, the court is not simply to determine whether a potential procedural benefit flows to the federal declaratory judgment plaintiff but, rather, whether there is any indication of an intent on the part of that plaintiff "to get her choice of forum by filing first." *Id.* Further, unless an improper motive appears from the record, the court should be "reluctant" to impute one. *Id.* Consistent with this, when a federal declaratory judgment plaintiff files its action after the state court litigation has begun, the Sixth Circuit has "generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of the action.'" *Id.* (quoting *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)).

Here, the McCords filed their state court action on March 24, 2004, and the jury returned a verdict in the McCords' favor on September 14, 2007. Assurance did not file this action until July 22, 2008, more than four years after the state court action was filed and months after the jury verdict. As such, it can hardly be said that Assurance filed this action as part of a race for

13

*res judicata*.  The Sixth Circuit has said that the federal declaratory judgment plaintiff should not be punished for exercising its rights under the Declaratory Judgment Act without evidence that those rights have been exercised with an improper purpose.  *Id.* at 558.  If anything, the timing of Assurance's declaratory judgment action serves to defeat any inference that Assurance engaged in procedural fencing, rather than the contrary, as the McCords argue.  As there does not appear to be any evidence whatsoever of an improper motive on Assurance's part, this factor squarely favors this court's exercise of jurisdiction.

D.      *Encroachment on State Jurisdiction*

The fourth factor to consider is whether accepting jurisdiction would increase friction between federal and state courts.  *Id.* at 559.  The Supreme Court has said that, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed."  *Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  The Sixth Circuit has clarified, however, "that the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction."  *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987).  Whether the federal court's involvement would increase friction between the state and federal courts is best determined by reference to three sub-factors: "(1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law

and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Scottsdale*, 513 F.3d at 560.

In *Scottsdale*, the Sixth Circuit provided thorough, concrete guidance as to how the district court should approach each sub-factor. The first "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* When "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court . . . the exercise of [federal] jurisdiction would be inappropriate." *Id.* Here, this sub-factor weighs in favor of the court's exercise of jurisdiction. The jury in the state court action already has resolved the relevant factual issues. While there is a possibility that the Tennessee Court of Appeals will review the jury's finding at some point in the future, this court can only rely on the factual record before it, and it would be imprudent to delay indefinitely a clarification of the important issues raised in this litigation because of mere speculation about the actions the Tennessee Court of Appeals might take. The record before this court demonstrates that the state court jury made sound factual findings after a thorough trial. There is no conflict or friction created by this court's accepting the state court jury's verdict and applying that, along with the rest of the factual record, to Assurance's claim for a declaratory judgment. Therefore, the first sub-factor weighs in favor of this court's exercise of jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id.* In *Scottsdale*, the Sixth Circuit indicated that consideration of this factor usually involves the question of whether novel issues of state law are raised in the declaratory action. *Id.* If so, there is a potential basis for the district court to

decline to hear the action.  *Id.*  Here, while the application of the expected or intended injury exclusion certainly raises issues of state law, as will be discussed in greater detail *infra*, the state law is very clear and precisely articulated by the Tennessee Supreme Court, such that it is easily applied.  Since the decisive issue does not involve a novel issue of state law, this sub-factor weighs in favor of this court's exercise of jurisdiction.

The final sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court."  *Id.* at 561. The Sixth Circuit has repeatedly found that, while not a *per se* rule, "issues of insurance contract interpretation are questions of state law with which state courts are more familiar and, therefore, better able to resolve," *id.*, because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation," *Bituminous*, 373 F.3d at 815.  Because a Tennessee state court is presumed to be more familiar than this court with how the expected or intended injury exclusion at issue in this case is interpreted and enforced in Tennessee, this final sub-factor weighs against this court's exercise of jurisdiction.

In sum, two of the three sub-factors weigh in favor of this court's exercise of jurisdiction, while one weighs against.  Although the court is mindful of the fact that state courts are presumed to have more familiarity with how the relevant insurance coverage exclusion is applied, the fact that the jury has already made its findings and the clarity of the applicable Tennessee law concerning the expected or intended injury exclusion are sufficient to persuade the court that the fourth factor, overall, favors the exercise of jurisdiction.

E.      *Alternative Remedies*

The final factor to consider is the availability of alternative remedies, such as a state court declaratory judgment action. *Scottsdale*, 513 F.3d at 561-62. As the Sixth Circuit has noted, the district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. In *Scottsdale*, the Sixth Circuit stated that prior precedent was inconsistent as to whether a state declaratory judgment action is a better or more effective alternative to a federal declaratory judgment action and that a district court should, instead of applying a *per se* rule, "be fact specific . . . [and] consider[] . . . the whole package of options available to the federal declaratory plaintiff." *Scottsdale*, 513 F.3d at 562. The *Scottsdale* court concluded that this factor weighed against the court's exercise of jurisdiction in that case because the plaintiff could have previously filed a declaratory judgment action in state court which, among other things, would have potentially allowed the state court judge to combine the two actions so that all issues could have been resolved by the same judge. *Id.*

Tennessee law provides for declaratory judgment actions, Tenn. Code Ann. §§ 29-14-101 to -113, which could serve as an alternative remedy for Assurance. This remedy would be moderately better than the instant declaratory judgment action to the extent that the issues presented here involve questions of state law. Some of the advantages associated with a state declaratory judgment action are mitigated, however, as this declaratory judgment action was filed after judgment was entered in the underlying state court action, foreclosing the possibility that the cases could be consolidated and resolved in the same proceeding. Thus, to the extent that this fifth factor weighs against the court's exercise of jurisdiction, it does not weigh especially heavily in that regard.

F.      *Balancing the Factors*

In balancing the factors, a court should consider how many of the factors weigh in favor of the exercise of jurisdiction and how many weigh against the exercise of jurisdiction and should consider that fact in light of the court's substantial discretion in matters related to declaratory judgments. *Scottsdale*, 513 F.3d at 563. Here, four of the relevant factors weigh in favor of the court's exercise of jurisdiction over this matter and only one weighs, and mildly so, against the court's exercise of jurisdiction. Given that the scales thus tip strongly in favor of this court's hearing this case, the McCords' motion to dismiss will be denied.

## III.    Assurance's Motion for Summary Judgment

Having determined that it will exercise jurisdiction over this declaratory judgment action, the court next turns to Assurance's motion for summary judgment.

### A.    *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh

the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'"  *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law.  *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).  To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).  If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted.  *Anderson*, 477 U.S. at 249-52.  "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

B.      *Expected or Intended Injury Exclusion*

Assurance argues that, because the jury in the state court action found that Continental had engaged in intentional misconduct, Assurance has no obligation to indemnify or defend Continental because the relevant policy does not cover expected or intended injuries.  The McCords, by contrast, argue that the underlying state court determination is in the process of

being appealed and, therefore, is not yet final, that the question of whether the expected or intended injury exclusion raises an unsettled question of Tennessee law, and that there is factual evidence precluding a ruling at the summary judgment stage.[3]

It is undisputed that the insurance policy issued by Assurance to Continental included a provision excluding insurance coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."  (Docket No. 70 ¶¶ 3-5.)  It is further undisputed that the jury in the Williamson County litigation concluded that Continental committed "actual fraud" through an "intentional misrepresentation."  (Docket No. 47 Ex. 6; Docket No. 50 Ex. 1.)  The key issue here, then, is whether the expected or intended injury exclusion in the policy applies in this case, in which event Assurance has no obligation to indemnify or defend Continental.

In interpreting and applying an expected or intended injury exclusion, such as that at issue here, Tennessee law begins with the premise that "the purpose of such exclusionary language is to prohibit the use of insurance to provide indemnity for civil tort liability that results from an insured's intentional wrongdoing."  *Tenn. Farmers Mut. Ins. Co. v. Evans*, 814 S.W.2d 49, 54 (Tenn. 1991).  With this overarching purpose in mind, the Tennessee Supreme Court has

_____

[3]In conjunction with the briefing on its motion for summary judgment and consistent with the applicable local rule, Assurance filed a statement of undisputed facts (Docket No. 54), to which the McCords responded (Docket No. 70).  In addition to filing their response, the McCords filed, on March 12, 2009, their own additional statement of facts (Docket No. 68), and Assurance filed a response to the same on March 20, 2009 (Docket No. 72).  For some reason, the McCords have moved to deem their additional statement of facts undisputed on the grounds that Assurance failed to respond (Docket No. 80), a claim that is completely untenable given Assurance's March 20, 2009 filing.  Whether the filing of this motion stems from counsel's oversight of the relevant filings or whether it is simply frivolous, it is not well taken and will be denied.

stated that, in order to find that an exclusion applies, the party seeking enforcement must show that "the insured intended the act *and* also intended or expected that injury would result." *Id.* at 55. Crucially, though, "intent [to cause injury] may be actual or inferred from the nature of the act and the accompanying reasonable foreseeability of the harm. It is immaterial that the actual harm was of a different character or magnitude or nature than that intended." *Id.* Indeed, where the facts show that the insured intended or could have reasonably expected "*some type of injury*," those facts are sufficient to establish that the insured intended or expected the harm at issue. *Id.* at 56 (emphasis added).

In their complaint in the state court action, the McCords claimed that Continental intentionally concealed that the home was not built to the relevant code standards and that Continental intentionally misrepresented that the home was built to code standards.[4] (Docket No. 47 Ex. 1 ¶¶ 12-13.) At trial, two expert witnesses testified, on the McCords' behalf, that the manner in which the home was constructed indicated that Continental had intentionally built the home in violation of the relevant code standards and that Continental should have known, during construction of the home, that water intrusion and damage was a substantial probability as a result of those code violations. (*Grange* Docket No. 29 Ex. 2 at 71-72; *Grange* Docket No. 29 Ex. 1 at 103-06.)[5] Further, Mr. McCord testified that he explicitly asked a representative of the

---

[4]Although the McCords attempt to argue that their complaint in the Williamson County litigation "couched the personal injuries sustained in terms of negligence" (Docket No. 66 at 22), a brief review of that complaint quickly disproves that argument, as the McCords unequivocally asserted that Continental "made an intentional misrepresentation . . . with fraudulent intent" and that the defendants engaged in "actual . . . fraud." (Docket No. 47 Ex. 1 ¶ 13; Docket No. 47 Ex. 5 at 1.)

[5]This court previously granted Assurance's motion to utilize the trial transcript submitted in the context of the *Grange* litigation. (Docket No. 38.)

builder whether the home was built "to codes" and was assured that it was.  (*Grange* Docket No. 29 Ex. 2 at 187.)  Mr. McCord went on to testify that he would not have purchased the home unless the representative had assured him that it was built to code standards.  (*Grange* Docket No. 29 Ex. 2 at 189.)  Mr. McCord also presented evidence that Prestige's home warranty materials contained written assurances that the home was built according to code standards, and Mr. McCord testified that he relied on that representation in making the purchase decision. (*Grange* Docket No. 29 Ex. 2 at 193-96.)  Mrs. McCord also testified that she would not have purchased the home unless she was assured by the defendants that the home was built according to code standards.  (*Grange* Docket No. 29 Ex. 4 at 20.)  The jury then determined that Continental had, indeed, made an intentional misrepresentation and awarded the McCords $525,000 in damages.  (Docket No. 47 Ex. 6.)

As the trial record and the subsequent jury verdict demonstrate that Continental knew or should have known that the home was not constructed to code and made an intentional misrepresentation about this fact in order to induce the McCords to purchase the home, the first prong of the *Evans* test, requiring that the "insured intended the act," is satisfied.[6]  *See Miele v.*

_____

[6]The McCords assert that *Evans* does not govern this case and, instead, that the applicable state law is uncertain, arguing that *Evans* did not address the application of an expected or intended injury exclusion in the context of a case, such as this, that involves physical harm.  This argument gets no traction, however.  The test set out in *Evans* provides: "in order to find that an intended or expected acts exclusion applies, it must be established that the insured intended the act *and* also intended or expected that injury would result."  *Evans*, 814 S.W.2d at 55.  Although that particular case arose in the context of a property damage claim, nothing in *Evans* suggests that the test it established should be so narrowly limited in its application. Additionally, the McCords cite *Harrell v. Minnesota Mutual Life Insurance Co.*, 937 S.W.2d 809 (Tenn. 1996), which involved the question of when a death is considered accidental for insurance purposes and rejected the traditional "*Distretti* rule," which required both the means and the results to be involuntary, unexpected and unusual for a death to be considered accidental. That case, however, is not controlling here, as it involves the question of accidental death, not

*Zurich U.S.*, 98 S.W.3d 670, 674 (Tenn. Ct. App. 2003) (ruling that the state court jury's finding that the conduct was willful was sufficient to establish the applicability of the first prong of *Evans*). Further, it is clear that injury was reasonably foreseeable and expected from that intentional conduct, as the McCords' own expert witnesses testified at trial that Continental knew or should have known that the manner in which the home was constructed could result in some injury. The fact that Continental may not have intended or expected the specific type of harm that resulted, or that the resulting harm was different in scope and severity than that which might have been foreseen, is irrelevant, as *Evans* clearly provides that, so long as the insured intended or expected *some* harm, "[i]t is immaterial that the actual harm was of a different character or magnitude or nature than that intended." *Evans*, 841 S.W.2d at 55. As the *Evans* court recognized, the purpose of an expected or intended injury exclusion is to prevent "indemnity for civil tort liability that results from an insured's intentional wrongdoing." *Id.* at 54. Here, there is only intentional wrongdoing and foreseeable damages flowing therefrom. Therefore, under Tennessee law, the expected or intended injury exclusion applies, and Assurance has no obligation to indemnify or defend Continental for the damages caused by this intentional conduct, which is to say, all damages awarded by the jury in the underlying Williamson County litigation.[7]

---

the application of an expected or intended injury exclusion, as did *Evans*. As such, *Harrell* neither calls into question the ruling in *Evans* nor provides a more apt analogy to this case than does *Evans*.

     [7]The McCords argue that, even if Assurance has no obligation to indemnify Continental with respect to the Williamson County litigation, it has an ongoing obligation to defend Continental in connection with that litigation. The McCords are correct to the extent that, under Tennessee law, "the duty to defend is broader than the duty to pay or indemnify" and is "determined *solely* by the allegations contained in the complaint." *St. Paul Fire & Marine Ins.*

Moreover, despite the McCords' argument to the contrary, there is no factual evidence that precludes summary judgment here. In support of this argument, the McCords state that injury related to mold was a relatively new concept in the medical community at the time the home was built and that a home builder, therefore, could hardly have known of the risk of such injury.[8] The McCords point to testimony given by a Continental representative to the effect that mold was not "an issue" when the home was built and would not have been expected or intended to harm the McCords. Once again, however, Tennessee law is clear that the precise nature or scope of the injury need not be foreseen for an expected or intended injury exclusion to apply, so long as the insured intended the act and intended or expected some harm as a result of that act.

The McCords also point to the testimony of an expert witness regarding the application of the expected or intended injury exclusion to the particular facts of this case. However, the application of the exclusion is a matter of Tennessee state law, and, in applying the exclusion to this case, the court is guided by the relevant rulings of the state courts, rather than by the legal conclusions reached by the McCords' proffered expert. As such, this expert testimony does not

---

*Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994) (citing *Am. Policy Holders Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)). Thus, as the allegations in the McCords' complaint included allegations for which Assurance may have had an obligation to indemnify Continental, had the jury ruled in the McCords' favor on those particular claims, Assurance had a duty to defend Continental with respect to all of the claims asserted by the McCords in the Williamson County litigation. *See Drexel Chem Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) ("If even one of the allegations [in the complaint] is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy.") However, none of the authority cited by the McCords supports the proposition that the duty to defend persists beyond the point at which judgment was entered for the McCords on claims that clearly are not covered by the relevant insurance policy.

[8]Based upon its own experience as a lawyer and as a judge, the court disagrees with this assertion.

establish a genuine issue of fact to defeat summary judgment. *Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581, 583 (6th Cir. 1999) (holding that, where an insurance policy exclusion was unambiguous, evidence of an expert witness's conclusion to the contrary is not admissible); *see also Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 974 (6th Cir. 2006) ("Simply having experts restate general facts and announce legal conclusions without any analysis does not create a genuine issue of material fact."); *Williams v. Ford Motor Co.*, 187 F.3d 533, 543 (6th Cir. 1999) ("[I]n order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." (citation omitted)).

Finally, the fact that the jury verdict is currently being appealed — an appeal which has been stayed indefinitely pending the resolution of Corinthian's bankruptcy proceeding — and that the McCords intend to challenge the Williamson County court's rulings on their erstwhile Tennessee Consumer Protection Act and constructive fraud claims, claims that do not require a showing of intent, does not counsel against this court's conclusion that the expected or intended injury exclusion applies here. This court must rule on the pending motion for summary judgment based on the record and findings before it, and it is neither necessary nor prudent for the court to indefinitely delay providing relief and clarity to the parties who are before the court presently because of the possibility of a future appellate ruling in the underlying action.

Because the McCords' damages were expected or intended by the insured under Tennessee law, this court finds, as a matter of law, that Assurance does not have an obligation to indemnify or defend Continental with respect to the damages awarded by the jury in the Williamson County litigation, and summary judgment will be granted for Assurance.

**IV. The McCords' Motion *In Limine***

As summary judgment will be granted for Assurance, the McCords' motion *in limine* to exclude the testimony of Assurance's designated rebuttal expert will be denied as moot.

## <u>CONCLUSION</u>

For the reasons discussed herein, the motion to dismiss filed by the defendants Thomas C. McCord and Elaine E. McCord will be denied and the motion for summary judgment filed by the plaintiff Assurance Company of America will be granted. Additionally, the plaintiff's motion to strike the McCords' sur-reply will be denied as moot, the McCords' motion to deem their additional statement of facts undisputed will be denied, and the McCords' motion *in limine* to exclude the plaintiff's rebuttal expert from testifying will be denied as moot

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge